**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **ATLANTIC COAST LIFE INSURANCE COMPANY,**<br><br>Plaintiff,<br><br>v.<br><br>**DENISE GAWAJEK, et al.,**<br><br>Defendants. | **Case No. 1:25-cv-00706**<br><br>**Judge McFarland**<br><br>**PROPOSED UNDISPUTED FACTS** |

1. Ken Schmidt, who died in December 2023, is the father of defendants Denise Gawajek, Kelly Hesketh, Kerri Schmidt, and Jeff Schmidt.[1] *See* doc. 21-2 (Stanfield Aff.) at PAGEID #: 18, ¶8.

2. Ken was divorced from defendant Loretta Schmidt, but Ken and Loretta lived together. *Id.* at ¶9.

3. In 2017, on Jeff's application, the Hamilton County (Ohio) Probate Court established a guardianship for Ken. Jeff was appointed as the guardian. *See* doc. 1 (Complaint) at PAGEID #: 3, ¶12.

4. From 2019 to 2022 Ken consulted periodically with physicians, nurse practitioners, and other clinicians at Riverhills Neurology or Riverhills Neuroscience. *See* doc. 22-2 (Riverhills medical records) at PAGEID #: 22-97.

---

[1] Because several parties share the last name Schmidt, this statement of proposed undisputed facts refers to the parties by their first names.

5. In December 2020, with consent of his then-guardian Jeff, Ken underwent a neuropsychological evaluation through Riverhills by Dr. Megan Marlow O'Connor, Ph.D. Dr. O'Connor determined that Ken suffered from only "mild cognitive impairment," and concluded that "[Ken's] current neurocognitive profile is not suggestive of Alzheimers disease as he does not demonstrate hallmark characteristics such as rapid forgetting or semantic language dysfunction." *See* doc. 22-2 (Riverhills medical records) at PAGEID #: 60.

6. The probate court then terminated Ken's guardianship in February 2021, on the ground "that there is no further need for the guardianship to remain open." Doc. 1 (Complaint) at PAGEID #: 3, ¶13 and doc. 1-5 (entry terminating guardianship) at PAGEID #: 72.

7. Ken continued to be seen at Riverhills until 2022, including evaluations for issues such as balance problems and numbness that are common in octogenarians, and he was never diagnosed with anything beyond mild cognitive impairment. *See* doc. 22-2 (Riverhills medical records) at PAGEID #: 22-97.

8. Kenneth Stanfield has continuously worked as an insurance agent in Ohio since he was first licensed as such in 1984. He is the principal of Wealth Retirement Group, LLC, and as such is an agent for Atlantic Coast. *See* doc. 21-1 (Stanfield Aff.) at PAGEID #: 18, ¶2-5.

9. When meeting with a client to discuss any insurance or financial product,

but particularly when meeting to discuss an annuity, it is Stanfield's practice to take time to understand the client's personal financial circumstances and their family and relationships, and also to satisfy himself that the client has the capacity to make financial decisions such as the purchase of an annuity. *See* doc. 21-1 (Stanfield Aff.) at PAGEID #: 18, ¶7.

10. In April of 2022 Stanfield met Ken at Ken's home for the purpose of discussing the purchase of an annuity. *See* doc. 21-1 (Stanfield Aff.) at PAGEID #: 18, ¶6.

11. Based on Stanfield's discussions with Ken, and based on Stanfield's experience as an insurance agent since 1984, Stanfield believed Ken to be of sound mind and to have the capacity to purchase the annuity. *See* doc. 21-1 (Stanfield Aff.) at PAGEID #: 18, ¶10.

12. Stanfield found that Ken understood the purpose of their meeting, that Ken understood his assets and financial condition, that Ken knew the names of his family members, and that Ken understood and appreciated his relation to his family, including both his four children and Loretta, with whom Ken resided even though they were divorced. *See* doc. 21-1 (Stanfield Aff.) at PAGEID #: 18, ¶6-10.

13. If Stanfield had not found Ken to satisfy those conditions, he would not have recommended that Ken purchase an annuity. *See* doc. 21-1 (Stanfield Aff.) at PAGEID #: 18, ¶11-12.

14. Ken did want to purchase an annuity, and Stanfield completed the

application with him. *See* doc. 21-1 (Stanfield Aff.) at PAGEID #: 18, ¶12.

15. When applying for the annuity Ken supplied a beneficiary form that allocated death benefits in the following proportions: 20% to Denise, 20% to Jeff, 20% to Kelly, and 40% to Kerri. *See* doc. 1-3 (beneficiary designation in policy) at PAGEID #: 63. Atlantic Coast issued policy no. 02204119079 to Ken. Id. at PAGEID #: 23.

16. In December of 2023, Stanfield met with Ken at Ken's home again. *See* doc. 21-1 (Stanfield Aff.) at PAGEID #: 19, ¶15.

17. The purpose of the meeting was Ken's desire to change the beneficiary designation on the annuity—specifically, Ken wanted to provide for Loretta, with whom he lived even though they were divorced. *See* doc. 21-1 (Stanfield Aff.) at PAGEID #: 19, ¶18.

18. As it was before, one purpose of Stanfield's meeting with Ken was for Stanfield to satisfy himself that Ken understood the purpose of their meeting, that Ken understood his assets and financial condition, that Ken knew the names of his family members, and that Ken understood and appreciated his relation to his children and Loretta. Stanfield was satisfied that Ken did. *See* doc. 21-1 (Stanfield Aff.) at PAGEID #: 19, ¶15-17.

19. Stanfield did not observe any signs of undue influence or duress, and based on Stanfield's observations of and interactions with Ken, Stanfield was satisfied that Ken made the beneficiary change voluntarily under his own free will. *See* doc. 21-1

(Stanfield Aff.) at PAGEID #: 19, ¶19.

20. Stanfield personally observed Ken sign the change-of-beneficiary form. *See* doc. 21-1 (Stanfield Aff.) at PAGEID #: 19, ¶20.

21. The new designation allocated death benefits in the following proportions: 50% to Loretta, 10% to Denise, 10% to Jeff, 10% to Kelly, and 20% to Kerry. Atlantic Coast acknowledged and accepted the change the following week. *See* doc. 1-8 at PAGEID #: 161 (letter from Policy Service Department).

22. Ken died in December 2024. *See* doc. 1-9, PAGEID #: 162 (death certificate).

Respectfully submitted,

*/s/ Jeffrey M. Nye*

Jeffrey M. Nye (0082247)
SSP LAW Co., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
Tel. (513) 533-6714
Fax (513) 533-2999
jmn@sspfirm.com
***Attorney for Defendant Loretta A. Schmidt***